# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BRAND CENTRAL, LLC | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-00358 |
| | § | Judge Mazzant |
| SNAPPLE BEVERAGE CORP.; | § | |
| DR PEPPER/SEVEN UP, INC.; and | § | |
| MOTT'S LLP | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Snapple Beverage Corp., Dr Pepper/Seven Up, Inc., and Mott's LLP's Partial Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #20). Having reviewed the motion and relevant pleadings, the Court finds that the motion should be denied (Dkt. #20).

## BACKGROUND

Plaintiff Brand Central, LLC entered into several written licensing agreements with Defendants.[1] Pursuant to these agreements, Plaintiff—a licensing agency—earned commissions by finding third parties to license Defendants' property.

In 2012, Plaintiff and Defendants entered into one of these agreements (the "2012 Agreement"). The 2012 Agreement expired on December 31, 2013, and included an additional four-year tail period, which continued through December 31, 2017.[2]

---

1. The parties executed agreements in 2008, 2010, 2012, and 2014.
2. The agreements executed by the parties provided for four-year "tail periods" commencing at the expiration of the agreements. During these periods, Defendants paid Plaintiff commissions so long as Defendants continued to receive licensing revenue from licensees (Dkt. #16 ¶ 15).

Plaintiff and Defendants entered into a new agreement on January 1, 2014 (the "2014 Agreement"). The 2014 Agreement expired on December 31, 2015, and contained a four-year tail period, which continued through December 31, 2019.

The 2014 Agreement provided that "Plaintiff shall earn a commission in the amount of 25% of all Licensing Revenue (the 'Commission') beginning 45 days following each quarter in which such Licensing Revenues were received." (Dkt. #16 ¶ 25). The 2014 Agreement defined Licensing Revenue as "any and all advances, royalties, fees and monetary minimum guarantees received by [Defendants] in consideration for the rights granted pursuant to a License Agreement, but shall be exclusive of any applicable withholding taxes."[3] (Dkt. #16 ¶ 25).

After the expiration of the 2014 Agreement, Defendants decided not to enter into a new licensing agreement with Plaintiff. However, Plaintiff continued to provide licensing services to Defendants, and Defendants continued to pay commissions to Plaintiff until April 2017. Defendants contend that their obligation to pay commissions to Plaintiff ended on December 31, 2015, the expiration date of the 2014 Agreement. Plaintiff claims it is entitled to commissions that were incurred during the 2012 and 2014 Agreements, as well as the respective tail periods.

Consequently, Plaintiff filed suit on May 15, 2018 (Dkt. #1). On June 26, 2018, Plaintiff filed its First Amended Complaint (Dkt. #16). On July 10, 2018, Defendants filed their Partial Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #20). On July 24, 2018, Plaintiff filed Plaintiff's Opposition to Defendants' Partial Motion to Dismiss Amended Complaint (Dkt. #23). On July 31, 2018, Defendants filed their Reply in Support of their Partial Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #26). On August 2, 2018, Plaintiff filed Plaintiff's Sur-Reply in Opposition to Defendants' Partial Motion to Dismiss Amended Complaint (Dkt. #27).

---

3. The 2012 Agreement contains the same material terms regarding Licensing Revenues as the 2014 Agreement.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556

U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Therefore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendants move to dismiss Plaintiff's promissory estoppel, unjust enrichment, and quantum meruit claims because quasi-contract claims are barred under Texas law when neither party disputes the existence of a contract governing a lawsuit (Dkt. #20) (citing *Farmer v. Bank of Am.*, 4:13-CV-472, 2014 WL 12575849, at *7 (E.D. Tex. July 15, 2014), *report and recommendation adopted sub nom.*, *Farmer v. Bank of Am., N.A.*, 4:13-CV-472, 2014 WL 12573521 (E.D. Tex. Aug. 19, 2014)). Specifically, Plaintiff pleads its quasi-contract claims only to the extent that Defendants deny the existence, enforceability, or validity of the agreements at issue (Dkt. #16 ¶¶ 43, 51, 57). Defendants state that they "*do not* deny the existence of valid, enforceable, express contracts governing the parties' dispute." (Dkt. #20 at p. 2) (emphasis in original). Therefore, Defendants argue Plaintiff's quasi-contract claims are barred as neither party disputes the validity or existence of the agreements.

Plaintiff responds that dismissal of its quasi-contract claims is premature (Dkt. #23). Plaintiff first explains that it is entitled to explore alternative theories under Federal Rule of Civil

4

Procedure 8(d).  Plaintiff also contends:

> Defendants' assertion that there is no disagreement regarding the parties' express contracts is misleading.  Although Defendants acknowledge that the contracts alleged in the Amended Complaint are valid and enforceable, the parties disagree about the extent to which the express contracts govern the services rendered by Plaintiff.  In particular, Plaintiff contends that it should be compensated under the parties' contracts for the work that it performed during the four (4) year "Tail Period" following expiration of each contract's two (2) year term.  Defendants, however, dispute that such services fall within the scope of the parties' express written contracts.  Because Plaintiff performed work during the Tail Periods at Defendants' direction and Defendants accepted the benefits of Plaintiff's efforts, Plaintiff is entitled to pursue "implied" or "quasi" contract theories of relief to obtain equitable compensation for its services.  If Plaintiff's claims for unjust enrichment, quantum meruit and promissory estoppel are dismissed now, and it is later determined that the parties' contracts do not cover the services Plaintiff provided during the Tail Periods, then Plaintiff will be left without any recourse to recover for the valuable work it performed for Defendants' benefit and at Defendants' request.

(Dkt. #23 at p. 2).

The Court agrees that dismissal of Plaintiff's quasi-contract claims is premature.  After a review of the motion and relevant pleadings, it is clear the parties do not dispute that the agreements are valid and enforceable, and to at least some extent govern the lawsuit.  However, it is unclear whether Defendants claim that certain licensing services allegedly performed by Plaintiff fall outside the scope of the parties' agreements.  At this point, Plaintiff's quasi-contract claims are at least plausible on their face as the facts alleged in the Amended Complaint raise Plaintiff's right to relief above the speculative level.  *See Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 737 (Tex. 2018) (citing *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex. 1976), *overruled on other grounds by Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989) ("[T]he existence of an express contract does not preclude recovery in quantum meruit

5

for the reasonable value of work performed and accepted which is not covered by an express contract."); *Cardinal Database Servs., LLC v. Kleski*, 1:15-CV-494 RP, 2015 WL 5062293, at *3 (W.D. Tex. Aug. 27, 2015) (citations omitted) ("[W]hen parties initially operate under an express contract, but continue to operate in essentially the same manner after the contract has expired, the rights of the parties are determined under implied contract principles."); *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, 415CV00307GHDCMC, 2016 WL 5423178, at *16 (E.D. Tex. Sept. 27, 2016). Therefore, the Court will not dismiss Plaintiff's quasi-contract claims without additional evidence demonstrating that the parties' dispute is solely governed by the agreements.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint (Dkt. # 20) is hereby **DENIED**.

**SIGNED this 6th day of November, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE